UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

JUAN RAFAEL GONZALEZ,

        Defendant.

13 Cr. 438 (KPF)

**Government's Sentencing Submission**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Russell Capone
Assistant United States Attorney
   *Of Counsel*



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2014

**By ECF**

Honorable Katherine P. Failla
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  United States v. Juan Rafael Gonzalez, S4 3 Cr. 438 (KPF)

Dear Judge Failla:

      The Government writes in connection with the sentencing of defendant Juan Rafael Gonzalez (the "defendant" or "Rivera"), scheduled to take place on February 6, 2014. As suggested herein, the Government believes that a sentence of 60 to 71 months' imprisonment is reasonable and not greater than necessary to achieve the purposes of sentencing. The defendant asks for a sentence of 60 months' imprisonment, which is the mandatory minimum in this case. While the parties therefore do not have any significant disagreements on sentencing, the Government nonetheless writes to place this defendant's role in the context of the larger conspiracy charged in this case.

      **The Offense**

      As reflected in the PSR, this case involves a drug organization that trafficked significant quantities of heroin in the New York City area in 2013. (PSR ¶¶ 15-27.) In connection with the investigation into that organization, law enforcement intercepted cellphone calls over a cellphone used by co-defendant Roberto Carlos De Jesus. Gonzalez was intercepted on a near daily basis communicating with De Jesus. Based on a review of those conversations and information later obtained from cooperating witnesses, the Government learned that De Jesus was the leader of the organization, and Gonzalez's role was to find much of the heroin that De Jesus would break up and re-distribute. In other words, Gonzalez provided De Jesus with sources of supply.

      Based on calls intercepted over the wire on or about May 12, 2013 and surveillance conducted in connection therewith, law enforcement determined that De Jesus and his associates would be preparing packages of heroin for redistribution at an apartment in the Bronx that day (the "Apartment"). (PSR ¶ 21.) During a call on May 12, De Jesus told Gonzalez that he wanted "half a hand," and "550," meaning half a kilogram or slightly more of heroin. Gonzalez asked if De Jesus was going to "do that today." De Jesus stated that he may, and Gonzalez responded that he would make a call. Later that night, Gonzalez told De Jesus that "the guy just called" him and that he was "going down that way now" with "Yeye," his brother Manuel

Gonzalez.  Later calls indicated that Gonzalez would meet De Jesus downstairs when he got to the Apartment building.[1]

The next day, agents entered the Apartment and secured it as a search warrant was obtained.  As agents entered the Apartment, a number of individuals began running to a bedroom in the Apartment, where they attempted to flee through a window containing a fire escape.  (PSR ¶ 23.)  Several of the co-defendants were apprehended in that process.  (Id.)  During the subsequent search of the apartment, agents recovered multiple packages of heroin, packaging materials, coffee grinders used to grind the heroin, loose heroin that had not yet been packaged, and glassine envelopes.  (Id.)  In other words, law enforcement had disrupted an active heroin mill.  Around the same time, the defendant, his brother Manuel Gonzalez, and De Jesus were arrested in the immediate vicinity of the Apartment building.  (PSR ¶ 22.)

As reflected in the discovery produced in this case, the amount of heroin seized at the Apartment on May 12, 2013 alone was approximately half of a kilogram of heroin.

**The Plea and Plea Agreement**

On October 24, 2013, pursuant to a plea agreement with the Government, the defendant pleaded guilty to Count One of the Indictment, charging him with conspiracy to distribute heroin. (PSR ¶¶ 2, 5.)  Although Count One charged a conspiracy to violate Title 21, United States Code, Section 841(b)(1)(A), the parties agreed to and the Court accepted a plea to a conspiracy to violate Title 21, United States Code, Section 841(b)(1)(B), i.e., a provision that carries a five year mandatory minimum sentence rather than a ten year mandatory minimum sentence.

In the plea agreement, the parties stipulated that the base offense level is 28 pursuant to Unite States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(6), because the amount of heroin involved was between 400 and 700 grams.  After taking into account acceptance of responsibility points, the overall offense level is 25.  Because the defendant's Criminal History Category is I, the applicable Guidelines range is 57 to 71 months' imprisonment.  (PSR ¶ 6.)  However, because there is a mandatory minimum sentence of 5 years' imprisonment, the defendant's Stipulated Guidelines Range is 60 to 71 months' imprisonment.

The Probation Department has calculated the same Guidelines range, and recommends a sentence of 60 months' imprisonment.  (PSR ¶¶ 30-48, p. 18.)

**Argument**

A sentence within the applicable Guidelines range is sufficient but no greater than necessary to achieve the goals of sentencing, and principally the need to provide just punishment, promote respect for the law, and foster deterrence.

The defendant was not a leader of the drug trafficking organization, but nonetheless played a significant role by obtaining heroin for it.  Further, the quantity of heroin involved – stipulated by the parties to be between 400 and 700 grams of heroin, which is limited to the

---

[1] Each of these calls was in Spanish, and was translated to English.

Case 1:13-cr-00438-KPF   Document 137   Filed 01/30/14   Page 4 of 4

Page 3

amount seized on May 13, 2013 alone – is substantial.  A sentence within the range of 60 to 71 months' imprisonment will promote respect for the law, provide just punishment, and hopefully deter the defendant and others from becoming involved in the heroin trade.  The Government and society has a particularly important interest in deterring heroin trafficking, because heroin is a highly addictive substance that is again becoming increasingly prevalent in this district and elsewhere around the nation, destroying lives and communities.

Further, the defendant committed the crimes at issue while being here illegally.  (PSR ¶ 58.)  He also has one previous conviction for unlawfully possessing narcotics, although this was concededly many years ago.  (PSR ¶ 43.)  Nonetheless, the defendant's prior conviction and the fact that he was involved in trafficking a large quantity of heroin while committing the separate crime of being here illegally demonstrate a significant disrespect of the law.

Finally, a sentence within the Guidelines range would not promote unwarranted sentencing disparities between this defendant and others.  The Court has sentenced co-defendant Lorenzo Rivera to 24 months' imprisonment.  Rivera was a mill worker who was paid a couple hundred dollars to show up and package the drugs.  Gonzalez actually *obtained* those drugs and was at a much higher level than Rivera in the organization.  Thus, the fact that Gonzalez's Guidelines range is a few years higher than the sentence provided to Rivera does not create an unwarranted disparity.

**Conclusion**

For the foregoing reasons, the Government submits that a sentence within the Guidelines range of 60 to 71 months is sufficient but not greater than necessary to meet the purposes of sentencing.

                                                    Respectfully submitted,
                                                    PREET BHARARA

                                      By: s/ Russell Capone
                                           Russell Capone
                                           Assistant U.S. Attorney
                                           (212) 637-2247

cc: Natali Todd, Esq. (by ECF)